# STATE OF OREGON,
*Respondent,*

*v.*

# ROBERT LEO HITE,
*Appellant.*

(CR92-185; CA A78011)

883 P2d 890

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Harrison Latto, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Kaye E. Sunderland, Assistant Attorney General.

Before Warren, Presiding Judge, and Rossman and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant seeks reversal of his convictions for four counts of sodomy in the first degree, ORS 163.405, and two counts of rape in the first degree, ORS 163.375. He argues that the trial court erred in refusing to admit evidence about the victim's drug use, his health problems, and in admitting into evidence exhibits that included photographs of nude females found in his house. We affirm.

Defendant was indicted and convicted in 1992 of sodomizing and raping his daughter when she was between nine and 14 years old. The victim testified that the abuse stopped in 1984. In 1988, at age 18, she reported the abuse to the Children Services Division (CSD).[1] In 1992, defendant was interviewed by a police detective and confessed to sexually abusing the victim.

Defendant first assigns error to the trial court's evidentiary rulings that excluded evidence of the victim's drug use. During the trial, defendant made four offers of proof, which were rejected by the trial court, in which he attempted to introduce testimony regarding the victim's drug use. He argues that the proffered evidence is relevant to prove that his confession was false. According to defendant, the victim's drug use caused her to experience a personality change that resulted in her making a false report to CSD about the abuse. At trial, defendant testified that he confessed falsely as a means to assist his daughter in obtaining low cost counseling after she reported the alleged abuse to CSD. Therefore, he asserts that it follows that the evidence about the drug use is relevant to show that his confession in 1992 was given in furtherance of the victim's purported request made in 1988 asking him to lie about abusing her so she could obtain counseling. He also argues that the evidence was admissible to impeach the victim's testimony at trial about her use of drugs.

---

[1] This action was timely commenced. ORS 131.125(2) provides that a prosecution for sodomy in the first degree and rape in the first degree

"may be commenced within six years after the commission of the crime or, if the victim at the time of the crime was under 18 years of age, anytime before the victim attains 24 years of age or within six years after the offense is reported to a law enforcement agency or other governmental agency, whichever occurs first[.]"

The trial court ruled that the evidence was not relevant. Evidence is relevant if it has

> "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401.

The proper question is: "Does the item of evidence even slightly increase or decrease the probability of the existence of any material fact in issue?" *State v. Gailey*, 301 Or 563, 567, 725 P2d 328 (1986).

All of the evidence offered by defendant concerning the victim's drug use was either about her use of drugs *after* she had purportedly asked defendant to lie so she could obtain counseling, or was about her alleged drug use during an unspecified point of time. Without a nexus to the relevant period of time when the victim made her report to CSD and was seeking counseling, the evidence does not have the tendency to make defendant's testimony that he falsely confessed in 1992 to further the victim's goal of obtaining counseling in 1988 more likely. Also, the evidence could not be proper impeachment because, although she denied using drugs before 1988, the victim admitted on cross-examination that she had experimented with drugs after 1988. *See* OEC 613. The trial court did not err in holding that the evidence was not relevant.[2]

■ Defendant next assigns error to the trial court's ruling prohibiting him from testifying that his ability to communicate was impaired as a result of the medication he was taking. Defendant was taking the medicine because he had had two heart attacks in the recent past.[3] There is no

---

[2] Defendant also argues that the trial court's refusal to admit evidence of the victim's drug use violated his constitutional right to present a defense. Defendant did not make that argument to the trial court and, therefore, we do not address it.

[3] Specifically, defense counsel made the following offer of proof:

"Q Have you noticed any effect on your ability to communicate with people when you are getting tired under your medication?

"A Sometimes I find it difficult to think of the words and phrase statements. I just—

"[DEFENSE COUNSEL]: All right, Your Honor. I would like to offer this testimony to show some reason why my client has difficulty answering the questions. He's got health problems. He has difficulties thinking of things on the

evidence that defendant had the expertise and training that would make him competent to testify that, in his opinion, the medication was causing the symptoms about which he was complaining. The trial court did not err in sustaining the state's objection to the admission of defendant's testimony to that effect.

■■    Finally, defendant assigns error to the trial court's ruling that allowed the state to introduce into evidence Exhibits 1-4, which are materials that contain photographs of nude adult females. At trial, the victim testified that defendant took nude photographs and video recordings of her during the time that he was abusing her. The police did not find any such photographs or videotapes in defendant's possession when they searched his home in 1992. Relying on *State v. Vanderham*, 78 Or App 589, 717 P2d 647 (1986), defendant argues that the exhibits are inadmissible under OEC 401, 403[4] and 404(3).[5] The state responds that, because

---

stand. That can be interpreted by a jury as being evasive, but I think you need to know he has health problems affecting his ability to testify.

"* * * * *

"THE COURT: Do you plan on calling a physician to testify as to whether or not these drugs are having an effect?

"[DEFENSE COUNSEL]: No, Your Honor. I'm merely asking [defendant] to explain the effects that he has perceived himself. And he's certainly the most qualified individual to testify as to what effects these medications have had on him and to testify as to how they affect him, his medicines and his heart attacks."

The trial court ruled:

"THE COURT: I'm not going to let you—I'm not going to have him testify regarding the drugs and what effects they might have on his ability to testify. I will allow you to let him testify that he has had a heart attack and has slowed down. I will let the jury make whatever conclusions they want, but I'm not going to allow you to get into what effects conceivably the drugs have.

"* * * * *

"That's all I'm going to allow. I'm not going to allow you to speculate on what the results of that may have been for his speech purposes. You have to have someone qualified for that."

[4] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[5] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity

defendant pursued the theory at trial that the jury should disbelieve the victim's allegations of abuse because the police did not find any nude pictures or videos of the victim in defendant's possession, the exhibits are relevant to corroborate her testimony. The state also argues that the evidence makes it more likely that defendant was lying when he claimed on the witness stand that he had no interest in nude photography or child pornography, and that it shows his heightened interest in genitalia of female children. Finally, the state argues that any error in admitting the evidence was harmless.

The materials admitted into evidence do not depict prepubescent females, although Exhibit 1 contains photographs of a nude model wearing her hair in pigtails and with bobby socks on her feet. On cross-examination of Detective Crabtree, who had searched defendant's house, defense counsel asked if, in his experience, persons involved in the sexual abuse of children often acquire pornographic materials portraying children. Crabtree answered in the affirmative. He was then asked if he had found any photographs of the victim in defendant's home. Crabtree answered in the negative, and in response to more questions, indicated that "there was [*sic*] no nude photos of any children," and "no pornographic material whatsoever." On direct examination, defendant testified that he never took any nude photographs or movies of the victim. On cross-examination, defendant testified:

"Q   And you never took any pictures of [the victim] in the nude; is that correct?

"A   No.

"Q   I believe you testified a little bit ago that you fairly recently had gotten some camera equipment?

"A   Say, '87.

"Q   That kind of thing, taking photographs of naked children, naked people, that doesn't interest you at all?

"A   No.

"Q   Would you explain why, if you never took any of these photos, that you showed Detective Crabtree the place where you hid these photos that you never took?

---

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

"A That's a place that my son had showed me under the steps, and it was to help embellish my story.

"Q Do you have a locked file in your house?

"A Yes.

"Q And did you help Detective Crabtree get into the locked file?

"A Yes. Everything in the house was open for his—

"Q Isn't it true that there were items in there on how to do nude photography?

"A Yes.

"Q And when did you obtain those things?

"A When I first bought my camera, bought photographic books, saw adds [sic] on 'How to Make Money with Your Camera.'

"Q So you really are interested in nude photography?

"A No. But it was a way to make money, and when I got it, it was how to take nude photography. It's just a— * * * [i]t's like a mimeograph, things put together. It was a rip off.

"Q I see. How many times did you order this stuff?

"A I ordered several things, you know. I wasn't into the news photography yet, and I ordered these things in the back of photographic manuals that said, 'How to Make Money with your Camera,' * * *.

"Q So you never—after that point, you didn't do any nude photography?

"A No, never.

"Q And it is your testimony that it doesn't interest you at all?

"* * * * *

"A I'm not interested."

Thereafter, the prosecutor offered the exhibits that were recovered from defendant's house and that are the subject of this assignment of error. Over defendant's objection, the court admitted the exhibits into evidence.

In *State v. Vanderham, supra,* the defendant was convicted of sexual misconduct with his 12-year-old granddaughter. We held that the trial court erred in allowing the defendant's stepson to testify that two years before the

alleged abuse occurred, the defendant had given the stepson a magazine with a nude photograph of a young girl on its cover. We reasoned that the probative value of the magazine was remote and slight and that the effect of the evidence was to persuade the jury that the defendant was of deviant and bad character. We concluded that the prejudicial effect of the evidence outweighed its probative value, and reversed the defendant's conviction.

Recently, in *State v. Millar*, 127 Or App 76, 80, 871 P2d 482 (1994), we explained:

> "*Vanderham* is consistent with the general proposition that the possession of sexually explicit material is seldom sufficient to prove that the person possessing the material has a propensity for sexual misconduct. *See State v. Hunter*, 48 Or App 339, 617 P2d 273 (1980). However, the possession of sexually explicit material can be relevant and admissible when it tends to prove a specific fact or issue * * *." (Footnote omitted.)

For example, in *State v. Rood*, 118 Or App 480, 848 P2d 128, *rev den* 317 Or 272 (1993), we held that the trial court did not err in admitting evidence that the defendant had purchased x-rated videos while the victims were with him. We said:

> "Unlike in *Vanderham*, the challenged evidence was not offered to prove defendant's propensity to commit the crimes. It corroborated [the victims'] description of the circumstances and events surrounding the crimes." 118 Or App at 485.

■ First, we discuss the state's argument that the evidence impeaches defendant's testimony. Only evidence that directly impeaches defendant's testimony is admissible as impeachment evidence; evidence that constitutes collateral impeachment is not admissible. "The test of whether a fact inquired of during cross-examination is collateral is whether the cross-examining party would have been entitled to prove it as part of tending to establish its case." *State v. Johnson*, 277 Or 45, 48, 559 P2d 496 (1977).

Defendant did not raise on direct examination the issue of his possession of nude photographs of other females. The issue arose because the state cross-examined defendant on the issue. Defendant did not deny that he acquired the exhibits or that he had an interest in nude photography at one

time. The exhibits do not impeach defendant's testimony in that regard. Moreover, any impeachment value was collateral to what the state was entitled to prove regarding the elements of the charge. We hold that the exhibits were not admissible for purposes of impeachment.

The closer question is whether the evidence is relevant to corroborate the victim's testimony that defendant took nude photographs of her. In his confession, defendant told the officer that in anticipation of an investigation by CSD, he had destroyed all of the videos and photographs of the victim that he had taken in 1988. Nonetheless, during the trial and in closing argument, defense counsel emphasized that the police had not found any photographs to corroborate the victim's testimony and, therefore, her testimony should not be believed.

Exhibit 1 is a magazine pin-up of a nude pubescent female wearing her hair in pigtails and wearing bobby socks. Exhibit 2 is a catalog advertising for sale photographs of nude pubescent females. The catalog contains some 20 pages with multiple photographs on each page. It represents to be a 1987 publication. Exhibit 3 is an advertisement for model release forms and for a course on how to photograph nude models. It is in an envelope postmarked in 1987. Exhibit 4 is an instruction book on how to "earn top money photographing nude models." It was copyrighted in 1986. All of the exhibits contain photographs of female genitalia. None of the exhibits portray prepubescent females.

In *State v. Hampton*, 317 Or 251, 255, 855 P2d 621 (1993), the court said:

> " 'The proper inquiry [in determining logical relevance] is: "Does the item of evidence even slightly increase or decrease the probability of the existence of any material fact in issue? If the item of evidence affects the balance of probabilities to any degree, it is logically relevant." ' "

In order to be relevant, the exhibits must have a tendency to increase the probability that defendant sexually abused the victim from 1979 to 1984 by corroborating her testimony that defendant took nude photographs of her during that time. The exhibits were discovered in defendant's possession in 1992. During the offer of proof regarding

Exhibit 1, defendant testified that he came into possession of the exhibit in 1988 or 1989. Exhibits 2, 3, and 4 are materials that were published in 1986 or 1987. The victim testified that the abuse ended in 1984. Because defendant's possession of these materials is remote in time to the period of the alleged abuse, the materials do not even slightly increase the probability that the abuse occurred. The trial court erred when it held that the exhibits were relevant to the issues of this case.

■■ The state argues that, even if the trial court erred in admitting the exhibits, the error was harmless. Defendant argues that, because the jury convicted defendant by a 10-2 verdict, it cannot be said that the error was harmless. OEC 103(1) provides:

> "Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"

A substantial right of a defendant is not affected if there is little likelihood that the exhibits affected the verdict. *State v. Isom*, 313 Or 391, 403, 837 P2d 491 (1992).

In *State v. Vanderham, supra*, we analyzed a similar argument made by the state:

> "The case hinged on the testimony of the victim. Although there was evidence tending to corroborate some of her testimony, there were no other witnesses to the crimes allegedly perpetrated by defendant. He denied any sexual contact with the victim. In a case which boils down virtually to a swearing match between the two principals, credibility is a crucial factor. We cannot say that the admission of the testimony of defendant's stepson [that the defendant had given him a magazine with a nude photograph of a young girl on the cover] did not materially impair defendant's credibility or that it was harmless." 78 Or App at 593. (Citation omitted.)

This case has similarities to *Vanderham* as well as differences. As in *Vanderham*, there were no witnesses to the crimes. Both cases turn on whether the jury believed the defendants or the complaining witnesses. The exhibit in *Vanderham* was remote in time to when it was claimed the abuse occurred. However, there are material differences

between this case and *Vanderham*. Here, defendant confessed to the crime and then recanted the confession at trial. Moreover, the record contains multiple references to explicit sexual conduct unrelated to the materials contained in the exhibits. Crabtree testified on the state's direct examination:

"Q   What did [defendant] say [during his confession]?

"A   He said that * * * in 1978 his wife passed away and they were living in San Bernardino, California. He said that he began fondling [the victim]. He said that within a year it went to what he called anal sodomy and oral copulation.

"Q   Did he tell you why he was doing this?

"A   He said he couldn't help it, it's just something he [did]—he didn't have a reason for doing it. He said he couldn't help it. Later he apologized and said he wished he hadn't.

"* * * * *

"Q   Okay. How did this conversation continue? Did you ask him questions or did he just continue to talk or how did it go?

"A   Well, like the part where he said he started out with fondling, he said all that on his own. Then after he was through with that, I asked him, I said were there any incidents involving the family dog in the residence? And that's all I said. Then he went and explained.

"Q   What did he say?

"A   He said that there was an incident involving—that his wife would—that he was aware that his wife would have the dog lick her, his wife's vagina. He said that he would do it, too. He said that she would do it to stimulate him sexually. He denied—he didn't say anything about his daughter, and I asked him about that. He said he didn't remember. The only thing he recalled about the family dog was with his wife.

"Q   What was the next thing you asked him about?

"A   Then I asked him about a vibrator. * * * [H]e said that he showed his daughter, [the victim], who he said was eight years old at the time, how to use it on her for quote, unquote, clitoral stimulation."

Also, Crabtree testified that defendant's description of the abuse in his confession and the victim's version of the abuse were "extremely close" in content. In fact, defendant's testimony at trial corroborated Crabtree's testimony in part.

On direct examination, defendant testified about the confession he gave Crabtree:

"Q   Can you describe—do you remember any specific questions?

"A   He said, 'Did you abuse your daughter?' And I said, 'I sexually abused my daughter.'

"* * * * *

"Q   Did he ask you if you had anal intercourse with your daughter?

"A   Yes.

"Q   What did you respond?

"A   I said 'yes,' because that was covered under the phone call that she described.

"Q   Did he tell [you what the victim] had told him?

"A   No.

"Q   Now, did he ask you about any other sexual acts?

"A   He mentioned the oral acts.

"Q   How did he ask that question?

"A   He said—the legal terms, I'm lost. He asked if I asked for my penis to be orally stimulated by her.

"Q   What did you say?

"A   I denied it.

"Q   What about other sexual acts?

"A   He asked if—he mentioned this dog in California, and asked if I knew anything about that. And I said, 'Nothing.' I did mention to him, I mean, there was no reason—I told him the truth, that my wife had used this dog."

On cross-examination, defendant's testimony continued to parallel the detective's and the victim's testimony about the abuse:

"Q   [D]id you or did you not tell Detective Crabtree that you had been having anal intercourse with your daughter?

"A   I said that to him.

"Q   And didn't you tell Detective Crabtree that you had also been having her orally sodomize you?

"A   It was discussed, and I think I told him maybe a couple of times.

"* * * * *

"Q   And isn't it true that you told Detective Crabtree * * * that you only had [the victim] suck your penis five times because [she] couldn't hack it?

"* * * * *

"A   I told him a lot of things. I might have said something like that, but not five times. A couple of times is what I told him."

■      We must decide if there is little likelihood that the erroneous admission of the exhibits would have affected the verdict in the light of the other evidence that was before the jury. As we have said, evidentiary error is not presumed to be prejudicial. We note that the testimony about the abuse of the victim was descriptive, graphic and included references to sexual practices not mentioned or portrayed in any of the exhibits that are the subject of the objection. Moreover, defendant's own testimony about his confession included the description of sexual acts that were far more inflammatory in their nature than the exhibits. The exhibits portray females in frontal nude poses with their genitals exposed. They were introduced into evidence at the end of the cross-examination of defendant. In the light of the evidence about the sexual conduct that allegedly occurred and the fact that that evidence was admitted before the admission into evidence of the exhibits, the exhibits could have had little shock value or inflammatory effect on the jury's deliberations. In sum, we conclude that evidence of defendant's possession of the exhibits in 1992 would have little likelihood of affecting the jury's decision about what occurred from 1979 to 1984. The erroneous admission of the exhibits was not prejudicial.

Affirmed.