Argued and submitted January 29, reversed and remanded for new trial
May 20, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## DOUGLAS ALAN SMITH,
*Appellant.*

## (95-1087; CA A94293)

960 P2d 877

Diane L. Alessi, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

HASELTON, J.

---

* Deits, C. J., *vice* Rossman, S. J.

## HASELTON, J.

Defendant appeals his conviction of escape in the second degree. ORS 162.155.[1] He asserts that the trial court erred in excluding evidence of "partial responsibility" under ORS 161.300 on the ground that defendant was charged with "knowingly" escaping. We conclude that the exclusion of that evidence was erroneous and that that error was not harmless. Consequently, we reverse and remand for new trial.

■ Defendant had been an inmate at South Fork Forest Camp. The camp is a minimum security facility bounded by an imaginary perimeter that is marked with orange signs reading, "Camp limits." It is undisputed that on February 25, 1995, defendant left the confines of the South Fork Forest Camp. On March 9, 1995, defendant was charged by indictment with escape in the second degree. The indictment alleged, "The said defendant on or about February 25, 1995, in Tillamook County, State of Oregon, did unlawfully and *knowingly* escape from South Fork Forest Camp, a correctional facility, contrary to the statutes made and provided and against the peace and dignity of the State of Oregon."[2] (Emphasis supplied.) Defendant contended that, because he was suffering from severe depression at the time of his escape, he did not "knowingly" leave the camp but, rather, has no memory of leaving the camp and "found himself" in the middle of the forest several hours after his escape.

---

[1] ORS 162.155 provides, in part:

 "(1) A person commits the crime of escape in the second degree if:

 "(a) The person uses or threatens to use physical force escaping from custody; or

 "(b) Having been convicted or found guilty of a felony, the person escapes from custody imposed as a result thereof; or

 "(c) The person escapes from a correctional facility; or

 "(d) While under the jurisdiction of the Psychiatric Security Review Board, the person departs, is absent from or fails to return to this state without authorization of the board."

[2] Although ORS 162.155 itself does not include a culpable mental state, ORS 161.115(2) provides, in part, that "if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

Before trial, defendant notified the trial court, pursuant to ORS 161.309(2) and (3), that he intended to rely on a defense of "partial responsibility" under ORS 161.300, which provides:

> "Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime."

This is commonly referred to as the "partial responsibility defense." *See State v. Francis*, 284 Or 621, 623-24 n 2, 588 P2d 611 (1978) (explaining that that term is actually a misnomer, but using it for convenience). Defendant proposed to call Dr. Johannsen, a psychologist who had evaluated him and was prepared to testify that defendant suffered from mental diseases at the time of his escape and that those diseases impaired his ability to form the intent to commit the crime.

The state moved to exclude Johannsen's testimony, relying on *State v. Francis*, 30 Or App 359, 567 P2d 558 (1977), *aff'd on other grounds* 284 Or 621, 588 P2d 611 (1978). In *Francis*, we held that evidence pertaining to a defense of "partial responsibility" under ORS 161.300 was properly excluded and that the trial court properly refused to instruct on that defense where the defendant was charged with rape and the indictment alleged that he acted "knowingly." We concluded that, because ORS 161.300 referred to "the intent * * * element of the crime," the statute made evidence of mental disease or defect admissible only when it was alleged that a crime was committed *intentionally*.[3] *Id.* at 362. Because the state had alleged that the defendant committed a crime *knowingly*,[4] ORS 161.300 did not apply. In this case,

---

[3] ORS 161.085(7) provides:

" 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described."

[4] ORS 161.085(8) provides:

" 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."

the state argued that defendant's situation was materially indistinguishable from that in *Francis*—because defendant was charged with acting "knowingly," the "partial responsibility" defense was not available.

Defendant opposed the state's motion on three grounds. First, defendant contended that excluding the evidence would violate his federal due process right to present witnesses in his defense, relying on *Chambers v. Mississippi*, 410 US 284, 93 S Ct 1038, 35 L Ed 2d 297 (1973), and *State v. Lajoie*, 316 Or 63, 90, 849 P2d 479 (1993). Second, defendant argued that, under *State v. Olmstead*, 310 Or 455, 800 P2d 277 (1990), ORS 161.300 evidence is admissible except as to strict liability offenses. Finally, defendant contended that, under *State v. Booth*, 30 Or App 351, 367 P2d 559 (1977), *aff'd* 284 Or 615, 588 P2d 614 (1978), the state has the burden of proving all elements alleged in the indictment, including mental state, and that, because evidence that a defendant suffered from a mental disease or defect is just one method of rebutting the state's allegations on mental state, Johannsen's testimony should have been admitted for that purpose.

The trial court concluded that our analysis in *Francis* controlled:

"Well, I think it's clear from the *Francis* case that [ORS] 161.300 is applicable only where the allegation in the indictment is that of intent. It may be a hypertechnical distinction, but I think, at least as the case law stands now, that's—that there is that distinction. I think [ORS] 161.300 relates—that's partial responsibility—relates to the element of intent. And I don't think it's applicable in this case where knowingly is alleged. [ORS] 161.295, which is the guilty except for insanity [statute], is applicable to—I believe, to any element or mens rea that the State alleges, but I think [ORS] 161.300 is limited. And so I think, in terms of the State's motion in limine, that that motion is well taken."

Following the preclusion of Johannsen's testimony, defendant's sole defense at trial was that the state could not prove that he knowingly left the work camp. Defendant was the only defense witness and testified that he remembered

waking up in the morning on the day of his escape and putting some clothes in a bag but had no further memory of the events of that day until he found himself out in the middle of the woods. Defendant was convicted.

On appeal, defendant argues that Johannsen's testimony should have been admitted under ORS 161.300.[5] Defendant acknowledges that in *Francis* we held that "partial responsibility" evidence is admissible only when intentional conduct is alleged. Defendant argues, nonetheless, that the Supreme Court affirmed our holding in *Francis* on a different ground and that the Supreme Court's subsequent analysis in *Olmstead*, 310 Or at 462-64, strongly suggests that a defense of "partial responsibility" is available when "knowing" conduct is charged.[6]

The state responds that our decision in *Francis* is clear, correct, and controlling, especially in that our analysis anticipated and applied the statutory construction "template" of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The state further contends that *Olmstead* does not say that the mental state "knowingly" or "with knowledge" constitutes specific intent. Indeed, according to the state, the language of *Olmstead* cited by defendant supports our construction of ORS 161.300 in *Francis*.

We return to *Francis*. There, the indictment alleged that the defendant had "knowingly" raped the complainant. The defendant sought to introduce evidence pertaining to a defense of "partial responsibility," and the trial court allowed

---

[5] Defendant also argues that he has a due process right to present Johannsen's testimony. Because we conclude that the testimony should have been admitted under ORS 161.300, we do not address his constitutional argument. *See, e.g., Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 564, 687 P2d 785 (1984) (court is obligated to resolve potentially dispositive statutory issues before considering constitutional questions).

[6] Defendant also relies on *State v. Booth*, 30 Or App 351, 567 P2d 559 (1977), *aff'd* 284 Or 615, 588 P2d 614 (1978). In *Booth*, which was decided contemporaneously with *Francis*, both we and the Supreme Court rejected the state's argument that "partial responsibility" evidence is admissible only when there is a lesser included offense to the crime charged. *Booth*, 284 Or at 618. Although defendant argues that the Supreme Court's holding "implied" that the "partial responsibility" defense is available where a "knowing" mental state is charged, any such implication is ephemeral. The question presented here, and squarely addressed in our opinion in *Francis*, was not at issue in *Booth*.

the state's motion "to exclude any evidence of partial responsibility." The court also refused to instruct the jury on "partial responsibility." After his conviction, the defendant appealed, assigning error to both rulings. In affirming the exclusion of the "partial responsibility" evidence, we rejected the defendant's argument that " 'intent' in ORS 161.300 [means] any culpable mental state recognized by the criminal law." *Francis*, 30 Or App at 361. Our conclusion was based on legislative history:

> "When the draftsmen began consideration of what became ORS 161.300, they noted that Model Penal Code § 4.02(1) (Tent Draft No 4, 1955) provides that psychiatric evidence is admissible to prove that a defendant 'did or did not have a state of mind which is an element of the offense.' They expressly rejected this formulation, preferring a formulation permitting psychiatric evidence to negate a 'specific intent or purpose which is an element of the crime':

>> " '* * * Professor Platt first pointed out that the phrase in section 1, "specific intent or purpose which is an element of the crime," was designed primarily to indicate that only where a specific intent was involved would the partial responsibility doctrine apply. * * *

>> " '* * * * * *

>> " 'Judge Burns then noted that the Model Penal Code section 4.02 used the term "state of mind" and asked if there was a difference between that phrase and "specific intent or purpose" as employed in the proposed draft.[7] * * *' Minutes, Criminal Law Revision Commission, Subcommittee No. 3, September 20, 1968, pp 1-2.

> "Later in the drafting process the phrase 'specific intent or purpose' was changed to simply read 'intent,' was adopted in that form by the Legislative Assembly and now appears as ORS 161.300. The legislative history contains no explanation for this change, although we can speculate that it may have been based on the fact that other statutes then

---

[7] Our opinion in *Francis* does not include the response to Judge Burns' question: "Professor Arthur replied that he thought there was a difference. California equated state of mind with malice and malice could be something other than or in addition to specific intent or purpose, he said." Minutes, Criminal Law Revision Commission, Subcommittee No. 3, September 20, 1968, 1-3.

being drafted removed the concept of 'specific intent' from Oregon law. * * *

"This history shows a purposeful decision to limit the admissibility of partial-responsibility evidence to situations where the crime charged included an 'intent' element." *Francis*, 30 Or App at 361-62 (citation omitted).

Given that analysis, and our consequent affirmance of the trial court's alleged exclusion of the "partial responsibility" evidence, we did not discuss or separately dispose of the defendant's second assignment of error regarding the court's refusal to give a "partial responsibility" instruction.

The Supreme Court then took review and affirmed our result, but on an entirely different ground. With respect to the first assignment of error, which was the sole basis of our holding, the court concluded:

"The claim that the trial court erred in excluding defendant's partial responsibility evidence is without merit, for the simple reason that the evidence in fact was admitted. Although the court did grant the State's motion 'to exclude evidence of partial responsibility,' the court's ruling, as a practical matter, was meaningless, since all the evidence relating to defendant's mental disease was admitted to prove insanity under ORS 161.295. In fact, defendant does not contend on appeal that he was precluded from offering any evidence by the ruling of the trial court. On the contrary, defendant argues that the defense of partial responsibility was 'overwhelmingly supported' by the evidence he introduced relating to his insanity defense. Although the trial court's ruling on the State's motion may have been confusing, it was not reversible error." *Francis*, 284 Or at 625 (footnote omitted).

Thus, our entire analysis was predicated on the mistaken belief that the disputed evidence had, in fact, been excluded. Because it was not, our discussion was gratuitous.

Given that treatment of the first assignment, the Supreme Court proceeded to the second, which challenged the trial court's refusal to give a "partial responsibility" defense instruction. The Supreme Court found no error because the requested instruction referred to "intent" as "an

element of the crime," and "the indictment charging defendant with rape did not allege 'intent.'" *Id.* at 626.[8] Accordingly, the court affirmed.

In *Olmstead*, the defendant was charged with driving while under the influence of intoxicants (DUII) and driving while suspended (DWS). The defendant gave notice that he intended to rely on the insanity defense. *See* ORS 161.295. The state filed a "motion in opposition" to the insanity defense, which the trial court granted. We affirmed, holding that, because DUII and DWS are both strict liability offenses, the insanity defense was not available. *State v. Olmstead*, 99 Or App 41, 42, 780 P2d 1201 (1989), *rev'd* 310 Or 455, 800 P2d 277 (1990).

On review, the Supreme Court agreed that DUII and DWS are strict liability offenses and, therefore, that the state need not prove the existence of a culpable mental state as part of its case-in-chief. *Olmstead*, 310 Or at 461. The court concluded that the lack of a mental element in the state's case-in-chief did not, however, make the insanity defense unavailable, because the insanity defense is not implicated until *after* the state has proved all the elements of its case-in-chief. To illustrate its reasoning, the court contrasted the nature of the insanity defense with "partial responsibility," in which the "defense" negates an element of the state's case-in-chief:

> "ORS 161.300 allows a defendant to introduce evidence of mental disease or defect to negate 'the intent which is an element of the crime.' One who succeeds in persuading the trier of fact * * * under this section is not guilty of the crime charged, because a necessary element of the crime is not established. If a crime * * * contains no element of a culpable mental state, then, logically, evidence that bears on intent cannot be material to any issue covered by ORS 161.300. Evidence of a mental disease or defect that is offered on the issue of intent would not, therefore, be admissible under ORS 161.300 in a case charging a strict liability crime."

---

[8] We recently referred to that aspect of the Supreme Court's analysis in *State v. Barnes*, 150 Or App 128, 132 n 2, 945 P2d 627 (1997), *rev allowed* 326 Or 627 (1998).

*Id.* at 462-63. The court also quoted from the minutes of the Senate Committee on Criminal Law and Procedure, February 19, 1971, discussing what is now ORS 161.300:

> " '[Partial responsibility] is a defense where the mental disease or makeup of the defendant may interfere with his ability to form the *particular kind of intent* required as a material element of the crime. * * *
>
> " '* * * * *
>
> " '[Partial responsibility] is a mental disease or defect which interferes with the ability to form *a particular intent*. This is not a lack of responsibility *which will excuse crime of any sort;* it will excuse only crime charged *which requires the state show a specific mental element.*' " *Id.* at 463-64 (some emphasis in *Olmstead*; some emphasis supplied).

The court concluded, albeit in *dictum*, that "[e]vidence of mental disease or defect that is offered on the issue of intent would not * * * be admissible under ORS 161.300 in a case charging a strict liability crime." *Id.* at 462-63. Thus, although *Olmstead* does not squarely resolve the question before us, its reasoning suggests that "partial responsibility" evidence is inadmissible only when no "culpable mental element" is alleged, *i.e.,* when the crime charged is a strict liability crime.

■    From our review of *Francis* and *Olmstead*, we conclude that neither is dispositive.[9] That is, the availability of a "partial responsibility" defense when "knowing" conduct is charged is an open question. Accordingly, we proceed to construe ORS 161.300 in the manner prescribed in *PGE*. We start with the text in context of the statutory provision, and, if the legislature's intent is not clear from that inquiry, we consider legislative history to inform our inquiry. *PGE*, 317 Or at 610-12.

■    As noted above, ORS 161.300 provides:

> "Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of

---

[9] We emphasize that the Supreme Court did not merely affirm our disposition in *Francis* on other grounds but that, in doing so, it called into question the propriety of our analysis. In all events, for the reasons set out below, 154 Or App at 46-51, we conclude that our analysis was incorrect.

whether the actor did or did not have *the intent which is an element of the crime.*"

"Intent" is not defined in the Criminal Code. " 'Intentionally' or 'with intent' " is defined in ORS 161.085(7) as the particular mental state where "a person acts with a conscious objective to cause the result or to engage in the conduct" described in the statute defining an offense, and the state would have us engraft that definition into ORS 161.300. However, neither "intentionally" nor "with intent"—the terms defined in ORS 161.085(7)—is in the language of ORS 161.300. Instead, ORS 161.300 refers to "the intent which is an element of the crime."

In general usage, "intent" has several meanings:

"**1a** (1): the act, fact, or an instance of intending: PURPOSE, DESIGN * * * (2): the design or purpose to commit any wrongful or criminal act that is the natural and probable consequence of other voluntary acts or conduct (3): the state of mind or mental attitude with which an act is done * * *."

*Webster's Third New Int'l Dictionary,* 1176 (unabridged ed 1993). The first two of those definitions are not inconsistent with the notion that "intent" in ORS 161.300 refers to a particular mental state. However, the third definition suggests another possibility—that "intent" in ORS 161.300 could refer to "state of mind or mental attitude" more generally, not only to the "intentionally" state of mind.[10] In fact, that possibility is syntactically more logical, because ORS 161.300 refers to

---

[10] *See also* Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law,* 195-97 (1972):

"The meaning of the word 'intent' in the criminal law has always been rather obscure * * *. Intent has traditionally been defined to include knowledge, and thus it is usually said that one intends certain consequences when he desires that his acts cause those consequences or knows that those consequences are substantially certain to result from his acts. The modern view, however, is that it is better to draw a distinction between intent (or purpose) and knowledge in some limited areas of liability.

"* * * * *

"[T]he word 'intent' in the substantive criminal law has generally not been limited to the narrow, dictionary definition of purpose, aim, or design, but * * * it has often been viewed as encompassing much of what would ordinarily be described as knowledge."

*"the* intent which is an element of the crime." (Emphasis supplied.) Such a grammatical structure suggests that there are several "intents," any of which could be *"the"* intent that is an element of a particular crime.[11] *See also State v. Webb*, 324 Or 380, 388, 927 P2d 79 (1996) (where modifying clause is not set off by commas, it is restrictive and therefore essential to the meaning of the sentence). Because we conclude that the legislature's intent is not clear from the text in context, we turn—as we did in *Francis*—to the legislative history.

ORS 161.300 was enacted as part of the comprehensive revision of substantive criminal law proposed by the legislatively created Criminal Law Revision Commission and embodied in the Oregon Criminal Code of 1971. In its commentary to the revisions, the Commission discussed the trend toward a subjective theory of culpability and explained that the "partial responsibility" doctrine was one way of tying a defendant's verdict and sentence more accurately to his or her actual culpability. Final Draft and Report on Proposed Criminal Code, 37-38 (1970).[12]

The Minutes of the Commission show that the proposal to adopt a "partial responsibility" defense statute received thorough consideration and was subject to extended discussion. Several portions illuminate the meaning of the enacted language. For example, Professor Platt explained how the statute would be applied:

> "If, for example, the defendant were being tried for murder in the first degree, he would not enter a plea of insanity but instead would introduce evidence by experts to show that because of a mental disease or defect he was unable to form

---

[11] To read "intent" in ORS 161.300 in the sense of a particular mental state, it is necessary to change other parts of the statute:

> "Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the actor did or did not have [the] intent [which] *when it* is an element of the crime charged." (Deleted text bracketed; added text italicized.)

However, in construing a statute, we may not insert what has been omitted by the legislature, nor omit what has been inserted. ORS 174.010; *see, e.g., Fernandez v. Board of Parole*, 137 Or App 247, 252, 904 P2d 1071 (1995) (applying rule).

[12] The Commission's commentary to the 1971 criminal code amendments is part of the code's legislative history. *See, e.g., State v. Chakerian*, 325 Or 370, 378-79, 938 P2d 756 (1997).

the necessary premeditation or intent required by the law, the *mens rea*, for the crime charged. The defendant would not be saying he was not guilty of something else—he would be saying, in effect that he ought not to be convicted of, say, the murder in the first degree charge, but perhaps ought to be convicted of a lesser included offense. *This would apply to any crime that is legally defined with an element of knowledge or purpose.* * * * The proposed draft, * * * makes it relevant that the evidence be brought in to show a lesser *mens rea* or that the defendant is incapable of the *mens rea* charged. * * * [The proposed statute] attempts to make the definition of crime more responsive to the culpability of the individual defendant. The stress, * * * is on subjectivity rather than on the old objective rule that the man intends all the consequences of his act." Minutes, Criminal Law Revision Commission, Subcommittee No. 3, January 18, 1969, 16-17 (emphasis supplied).

Later, Professor Platt explained:

"A person charged with a crime with a specific culpability element *such as intent or knowledge*—burglary, for example—under [ORS 161.300] could raise the partial responsibility defense and then produce evidence he was suffering from a mental disease or defect which would interfere with his ability to form *the requisite knowledge or intent* to commit the burglary." *Id.*, September 12, 1969, 6-7.

On a third occasion, Professor Platt explained:

"[Partial responsibility] is a defense where the mental disease or makeup of the defendant may interfere with his ability to form the particular kind of intent required as a material element of the crime.* * * The movement, identifiable throughout the country, is toward the diminished or partial responsibility test.

"* * * * *

"[Partial responsibility] is a mental disease or defect that interferes with the ability to form a particular intent. This is not a lack of responsibility which will excuse crime of any sort; it will excuse only crime charged which requires the state show a specific mental element." *Id.*, February 10, 1971, 3.[13]

---

[13] This discussion was quoted in *Olmstead*, 310 Or at 463-64. *See* 154 Or App at 45-46.

Finally:

> "Professor Platt stated that the partial responsibility defense would apply to many kinds of crimes, other than homicide, where there is a specific, identifiable intent as a material element. * * * [T]he partial responsibility defense * * * still directly relate[s] to the new homicide provisions in the Proposed Code because under the new provisions, murder may only be committed intentionally, knowingly or recklessly with extreme indifference to life. *All of these mental elements take a conscious formation of some capacity in the person's mind in order for him to understand that he is acting intentionally, knowingly or with extreme indifference to human life. The defendant should be allowed to present his evidence to try to convince a jury that because of mental disease or defect he was not capable of acting with these elements*[.]" *Id.*, February 10, 1971, 8-9 (emphasis supplied).

ORS 161.300 was enacted on January 1, 1972. The single fragment of legislative discussion we quoted in *Francis* occurred on September 20, 1968. Each of the excerpts of legislative history just quoted occurred *after* that date, as the three-year process of drafting and discussion continued.

■ From our comprehensive review of the legislative history, we are left with no doubt that the drafters intended that the language of the statute—"the intent that is an element of the crime"—be interpreted to, at least, include the "knowing" mental state. That is, our holding in *Francis* was based on an incomplete and, thus, flawed understanding of the legislative intent underlying ORS 161.300. We repudiate that holding. We consequently conclude that a defense of "partial responsibility" is available when "knowing" conduct is charged and, thus, that the court erred in excluding Johannsen's testimony.

■ We further conclude that the error was not harmless. As noted previously, defendant's sole contention in his defense at trial was that he lacked "an awareness that [his] conduct [wa]s of a nature" of leaving the camp, ORS 161.085(8), and instead he remembers nothing between being in the camp in the morning and "finding himself" in the woods outside the camp a few hours later. Johannsen's testimony that defendant in fact suffered from a mental disease

or defect that could have had such an effect went to the heart of defendant's sole defense. Under ORS 161.300, defendant was entitled to present that evidence.

Reversed and remanded for new trial.