Argued and submitted September 29, 2000, reversed and remanded June 6, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## TAMMY LISA GALLEGOS,
*Appellant.*

CF970313; A102941

28 P3d 1178

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Ceniceros, Senior Judge.

CENICEROS, S. J.

## CENICEROS, S. J.

Defendant appeals her convictions for two counts of forgery in the first degree and one count of forgery in the second degree. At trial, she raised the "partial responsibility defense," ORS 161.300, and contended that, because of a mental disease or defect, she was unable to form the intent to defraud required by the forgery statutes.

On appeal, defendant raises three assignments of error, all dealing with that defense. She argues that the trial court erred first, in refusing to take judicial notice and informing the jury of the court's order previously finding her unable to aid and assist in her defense; second, in not allowing into evidence a letter written by defendant showing her mental state at the time of the commission of one of the crimes; and third, in refusing to give a special jury instruction regarding intent. We reverse and remand.

Defendant claimed to have found a quantity of checks in a dumpster. She had a $35 clock on lay away at a flea market, and on February 12, 1997, she attempted to redeem it by passing one of the checks. She signed the true owner's name, left the payee field blank, and made the check out for $1,000,000. The shopkeeper knew defendant as a "street person" and refused to accept the check. Defendant told him that the check was good and that she would return for her change.[1]

Defendant was being evicted from her home by an individual who had purchased the property. On February 21, 1997, she went to a tavern where the individual worked and gave him a check for $60,000. She told him that the check was to purchase the property she was living in. He knew the check was not valid because he had known defendant for some time and because the payee was designated only as "Floyd" with no last name. Defendant also left a seven-page hand-printed letter addressed to "Mr. Floyd Matthews."

---

[1] The indictment charges these offenses in mixed chronological order, with Counts 1 and 3 allegedly occurring on February 21, 1997, and Count 2 on February 12, 1997. For ease of understanding, we set out the facts chronologically.

On February 21, 1997, defendant went into the Inland Empire Bank and attempted to cash a $600 check made out to "Tammy Mallegos," an obvious misspelling of her name. Defendant became very upset when the teller asked her for identification, and she asked the teller not to touch the picture on her identification card.

Based on those events, defendant was indicted for two counts of forgery in the first degree and one count of forgery in the second degree. On July 16, 1997, the court ordered defendant transported to the Eastern Oregon Psychiatric Center to determine whether she was fit to proceed. On August 19, 1997, the court signed an order finding defendant unable to proceed pursuant to ORS 161.360(2).

Defendant was confined at the Oregon State Hospital from September 1997 until February 1998, when she was returned to Umatilla County. Her diagnosis in February 1998 was "Schizophrenia, paranoid type, episodic with interepisode residual symptoms; Alcohol abuse, Amphetamine abuse; Panic disorder without agoraphobia." All were in satisfactory remission. On March 6, 1998, the parties stipulated that defendant was able to aid and assist in her defense.

Forgery in the first and second degree both require that the person act "with intent to injure or defraud." ORS 165.007; ORS 165.013.[2] Before trial, defendant filed a notice raising the "partial responsibility defense,"[3] pursuant to ORS 161.300. Her defense at trial was her inability to form that intent because of a mental disease or defect.

■    At trial, defendant asked the court to take judicial notice of and inform the jury of its order of August 19, 1997,

---

[2] ORS 165.007 provides:

"(1) A person commits the crime of forgery in the second degree if, with intent to injure or defraud, the person:

"(a) Falsely makes, completes or alters a written instrument; or

"(b) Utters a written instrument which the person knows to be forged."

A person commits forgery in the first degree if she commits forgery in the second degree, and the written instrument is a check for $750 or more. ORS 165.013(1)(d).

[3] The term "partial responsibility defense" is not entirely accurate but is in common usage and we will use it for convenience. See State v. Smith, 154 Or App 37, 40, 960 P2d 877 (1998); State v. Francis, 284 Or 621, 623 n 2, 588 P2d 611 (1978).

pursuant to ORS 161.360(2), finding her not fit to proceed. She argued that the court's finding that she could not aid and assist in her own defense was relevant to the issue of whether she could have formed the intent to defraud required by forgery statutes. The state objected on the ground that the court's finding and order were too remote in time from the commission of the crimes. The state also objected because "these are whole different issues. Aid and assist is a different issue as to partial responsibility." The court denied the motion, holding that "[i]t is not relevant basically in time." We review relevance determinations for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

■ On appeal, defendant argues that the order finding defendant unfit to proceed necessarily involved a finding that defendant had a mental disease or defect and that this finding should have been presented to the jury for its consideration. She further contends that the court erred when it held that the finding was not sufficiently close in time to the date of the crimes.

The state argues that defendant's mental state in August 1997, when the order was signed, is not relevant to her mental state in February 1997, the date of the crimes. The state also argues that evidence that defendant was unable to aid and assist in her own defense is not relevant to her ability to form intent.

Because of our disposition of this assignment of error, we first consider the state's argument that a finding that defendant was unable to aid and assist did not necessarily mean that she could not form intent. Although the state objected on this ground, the court based its ruling on the length of time between the crimes and the order.

The trial court's order of April 19, 1997, found "that the defendant is not now fit to proceed, as defined by ORS 161.360(2)," which provides:

"A defendant may be found incapacitated if, as a result of mental disease or defect, the defendant is unable:

"(a) To understand the nature of the proceedings against the defendant; or

"(b)   To assist and cooperate with the counsel of the defendant; or

"(c)   To participate in the defense of the defendant."

Defendant relies on ORS 161.300, which provides that "[e]vidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime." Defendant argues that the court's finding that she was unable to aid and assist was a finding that she had a mental disease or defect and that the jury should have been allowed to consider this condition in its evaluation of her ability to form intent. The state responds that

"the two issues differ in the standard by which they assess the defendant's mental condition. The court's inquiry under ORS 161.360 focuses on the defendant's ability to make decisions while under ORS 161.300 it focuses in on defendant's ability to form the requisite intent."

In short, the state argues that a person may not be able to participate in her defense yet still be able to form the intent to defraud.

ORS 161.300 allows evidence of a mental disease or defect to be admitted if it is relevant to the defendant's ability to form intent. Defendant moved only that the court take judicial notice of its order. She made no effort to introduce the psychological or psychiatric reasons for the order or why those reasons might have affected her ability to form intent. She did not present expert testimony. In *Ross v. City of Eugene,* 151 Or App 656, 665, 950 P2d 372 (1997), we held:

"Expert testimony is not essential when the issue presented relates to a matter that requires only common knowledge and experience to understand. *Lynd v. Rockwell Manufacturing,* 276 Or 341, 349, 554 P2d 1000 (1976). Expert testimony is required 'only where the proof involves matters that cannot be fully understood by the average juror without some expert assistance.' *Pacificorp v. Union Pacific Railroad,* 118 Or App 712, 715, 848 P2d 1249 (1993)."

*See also Vandermay v. Clayton,* 328 Or 646, 655, 984 P2d 272 (1999). In this case, defendant sought to bring before the jury

the unexplained fact that six months after the commission of the crimes and ten months before trial, the court had found the defendant unable to aid and assist in her defense. The significance of the court's order, if it had any significance at all, could not be understood by the average juror without expert assistance. The state raised the issue at trial by arguing that expert testimony would be necessary to explain how a finding that defendant was unable to aid and assist could be related to the issue of whether defendant later had the intent to defraud. The trial court sustained the state's objection on different grounds, but the state's argument was sufficient to put defendant on notice such that she could have created a different record had she wished. Accordingly, we conclude that the trial court did not err in refusing to take judicial notice of its order on the alternative ground that the order could not be helpful to the jury without expert testimony. *See Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 658-60, 20 P3d 180 (2001) (explaining the "right for the wrong reason" principle).

■ In her second assignment of error, defendant contends that the court erred in excluding a letter that revealed the incoherence of her thought processes at the time she committed one of the counts of forgery in the first degree. The letter was addressed to the landlord who was evicting her and delivered to his workplace on the same day that defendant offered the check for $60,000. It can be variously described as incoherent, confused and bizarre. In it, defendant claims among other things that she "cannot defect her post," needs "to locate weapons and continue" and ends with "[the] president himself told me there is no defecting as my father raised his children."

Defendant moved to introduce the letter to show her state of mind when she delivered it. Her state of mind, she contends, would be relevant to her ability to form the intent to defraud. The state objected on the grounds of improper foundation, hearsay, and relevance. The court sustained the objection without comment.

On appeal, the state argues that defendant failed to "lay a proper foundation" for the admission of the letter,

because she did not prove when the letter was written. Without this date, the state contends, it is impossible to connect the defendant's state of mind when she wrote the letter with her state of mind when she tendered the check. We understand the state's argument as challenging the relevance of the letter. If defendant did not present sufficient evidence that the letter was written near the time that defendant tendered the check, then the letter cannot make any fact about defendant's state of mind at the time of the tender any more likely. *See* OEC 401.

The state relies on *State v. Hite*, 131 Or App 59, 883 P2d 890 (1994), *rev den* 320 Or 508 (1995). In that case, we concluded that evidence was properly excluded as irrelevant because it concerned events that were either after the events at issue in the case or during an unspecified point in time. *Id*. at 62. In this case, by contrast, the point when defendant wrote the letter can reasonably be inferred from other evidence. The evidence is clear that defendant wrote the letter, that she left it for the individual that was evicting her on the same day that she tendered the $60,000 check, and that, in the letter, she referred to the eviction. Because defendant presented sufficient foundational evidence to support its temporal relevance, that state's "foundation" argument fails.

■    The state also argues that the letter is irrelevant because its contents "would not show it less probable that defendant intend[ed] to defraud or injure by uttering the checks."[4] We disagree. The letter obviously could show defendant's confused state of mind when she delivered it and attempted to negotiate a forged check at the same time. Her state of mind could in turn affect her ability to form the intent to defraud. The letter therefore was relevant evidence and should have been admitted. OEC 401.

■    We turn to the question of whether the failure to admit the letter was harmless error. *See* OEC 103(1) (evidentiary error not reversible "unless a substantial right of the party is affected"). Defendant delivered the letter on February 21, 1997, the same day she attempted to cash the check at

---

[4] The state does not pursue on appeal the third basis it asserted at trial for not admitting the letter, that it was hearsay.

the bank. On February 12, 1997, she had attempted to negotiate a $1,000,000 check. Her conduct during these incidents can only be described as strange. We cannot confidently say that the failure to admit the letter into evidence would not have affected the verdict. The error was not harmless. *See State v. Smith*, 154 Or App 37, 50-51, 960 P2d 877 (1998) (the exclusion of evidence that went to the heart of the defendant's sole defense was not harmless error).

In her third assignment of error, defendant argues that the court erred in failing to give a requested instruction that her mental disease or defect was relevant to whether she intended to defraud. The court correctly instructed the jury on all the elements of the crimes, including the intent to injure or defraud. The court was not required to instruct on partial responsibility, because defendant's theory was adequately covered by the general instruction on the state's burden of proof. *State v. Booth*, 284 Or 615, 619-20, 588 P2d 614 (1978); *State v. Stockett*, 278 Or 637, 645, 565 P2d 739 (1977).

Reversed and remanded.